# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **JABARI MOSLEY,** ) | |
| ) | |
| **Plaintiff,** ) | |
| v. ) | **Civil Action No.** |
| ) | **2:10–cv–02817–AKK** |
| **ALABAMA LOCK & KEY CO.,** ) | |
| **INC., et al.,** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM OPINION

Jabari Mosley brings this suit against Alabama Lock & Key Co., Inc., ("ALK") and the City of Birmingham ("City") alleging conversion of personal property. Before the court is ALK's motion for summary judgment, doc. 43, and the City's motion for summary judgment, doc. 45. The motions are briefed and ripe for review. *See* docs. 44, 46, 49, and 50. For the reasons explained below, the court will grant the motions.[1]

## I. Background

### *A. Factual Background*

The bizarre series of events in this case trace their origin to May 18, 2010, when Mosley called Ross Spurlock, a locksmith at ALK, to inquire about whether

---

[1] The court also has for consideration ALK's motion to strike, doc. 51, the affidavit Mosley submitted in opposition to the motion for summary judgment. Because the affidavit helped the court to understand Mosley's contentions in this case, the motion to strike is **DENIED**.

1

ALK could open a safe for which Mosley represented he had forgotten the combination.  2:10-cv-2601-AKK, doc. 1 at ¶ 5(a).[2]  Based on Spurlock's response, Mosley subsequently arrived at ALK with a safe.  *Id.* at ¶ 5(b).  When Spurlock opened the safe "with a crowbar", doc. 1 at 45, he saw that it contained a large amount of money packed in seven plastic bags (which was subsequently inventoried as $894,800 in U.S. currency).  *Id.* at ¶¶ 5(b) & (d).  To no surprise, given the suspicious nature of the scene, Spurlock told Mosley, "Ah, that's a lot of cash. . . . We've got to call the police, because if this cash is stolen, it's a crime."  Doc. 1 at 45.  Mosley offered Spurlock one of the seven bags of money as an enticement to keep quiet. 2:10-cv-2601-AKK, doc. 1 at ¶ 5(b).  Spurlock declined and called the police, *id.* at ¶ 5(c), probably because the offer to keep a seventh's share for simply opening a safe reaffirmed his suspicions that something seemed amiss.

City of Birmingham police officers arrived at ALK at some point with a drug detection dog that indicated the presence of drugs in the safe.  *Id.*  However, Mosley maintains that he "did not see any noticeable reaction in the dog."  Doc. 1 at 45.  Shortly thereafter, United States Drug Enforcement Administration ("DEA") task-force agents arrived and interviewed Mosley.  2:10-cv-2601-AKK, doc. 1 at ¶ 5(d).  In response to questions from the agents, Mosley made it clear

---

[2] This action originates from three consolidated cases.  Unless otherwise noted, reference to a document number, "Doc. _____," refers to the number assigned to documents in the present action, 2:10–cv–02817–AKK.

that the safe belonged to him and that he had saved the money over a 10-year period, *id.*, presumably because he had more faith in his memory recall or in the ability of locksmiths to save him from his memory, than in the nation's banking system.

Perhaps because of the positive hit by the drug detection dog, or because the officers simply refused to believe that Mosley could have accumulated the cash legally, John Walker, a DEA agent, confiscated the money. Walker left his business card with Mosley, doc. 1 at 14, and gave Mosley a receipt for the cash seized, *id.* at 61. The DEA subsequently sent Mosley written notice of the seizure by certified mail. *Id.* at 26, 32, 35, 38, and 52.

*B. Procedural History*

Two days after the seizure, Mosley filed an *in rem* action in the Circuit Court of Jefferson County seeking the return of the allegedly unlawfully seized $894,800, or in the alternative, a civil action against ALK, the City, and Walker in his capacity as a DEA officer.[3] Doc. 1 at 10–12. Walker subsequently removed the action to this court, *id.* at 1–5, which then substituted the United States as a defendant in place of Walker and consolidated the action with the forfeiture proceedings the United States had initiated regarding the $894,800, docs. 8 & 10. To make matters even more interesting, the DEA executed a search warrant and

---

[3] Mosley subsequently filed an amended complaint in this court alleging a new conversion claim against ALK seeking damages totaling $894,800. Doc. 16.

seized another $25,000 in U.S. currency from Mosley's residence, leading to another action by the United States seeking the forfeiture of this additional amount. *See* 2:11-cv-1156-AKK, doc. 1. The court eventually consolidated the two forfeiture actions. *See* 2:10-cv-2601-AKK, docs. 14 & 15.

Nearly four years after Mosley walked into ALK to seek its assistance in opening the safe, the United States and Mosley settled their dispute, and entered into a Stipulation of Settlement resolving all issues regarding the forfeiture of the currency and all claims by Mosley against the United States. Doc. 40 at 3. Consistent with their agreement, the court entered a Final Order and Judgment of Forfeiture awarding the United States $176,960 and extinguishing Mosley's interest in that $176,960. Doc. 41 at 4. The United States remitted $742,840 to Mosley. *See id.* Mosley subsequently filed a Stipulation of Dismissal, dismissing the United States from all further proceedings, acknowledging "full payment" of its obligations of the settlement, and with regards to the United States, disclaiming his interest in the remaining $176,960 of the cash found in the safe. Doc. 52. Having reached an agreement with the United States, the only remaining issue is Mosley's conversion claim against ALK and the City, and Defendants' contention that they are entitled to summary judgment.

## II. Legal Standard

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "Rule 56[] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (alteration in original). The moving party bears the initial burden of proving the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party, who is required to "go beyond the pleadings" to establish that there is a "genuine issue for trial." *Id.* at 324 (citation and internal quotation marks omitted). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the non-moving party. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970); *see also Anderson*, 477 U.S. at 255 (all justifiable inferences must be drawn in the non-moving party's favor). Any factual disputes will be resolved in the non-moving party's favor when sufficient

5

competent evidence supports that party's version of the disputed facts. *See Pace v. Capobianco*, 283 F.3d 1275, 1276, 1278 (11th Cir. 2002) (a court is not required to resolve disputes in the non-moving party's favor when that party's version of events is supported by insufficient evidence). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (citing *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989)). Moreover, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252)).

## III. Analysis

As a preliminary matter, the court turns first to Mosley's contention that the court should deny summary judgment because Mosley has not had an opportunity to engage in discovery. Doc. 48 at 1. To succeed on these grounds, Mosley "may not simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts, but rather . . . must specifically demonstrate how postponement of a ruling on the motion will enable [him], by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact." *Vitech Am., Inc. v. Gateway, Inc.*, 149 F. App'x. 860, 861 (11th Cir. 2005)

(quoting *Reflectone, Inc. v. Farrand Optical Co.*, 862 F.2d 841, 843–44 (11th Cir.1989)). Rather than making the necessary showing, Mosley relies solely on his counsel's statement that "based upon practicing law in the State of Alabama for forty years, I am convinced that neither Plaintiff Jabari Mosley nor I can adequately present to the Court all 'facts essential to justify' his opposition to the motions for summary judgment filed by [the Defendants] until after discovery is completed." Doc. 48–2 at 3. Such a contention is precisely the kind of vague assertion that this Circuit has rejected. *See Vitech Am.*, 149 F. App'x at 861. Accordingly, in light of the verified complaints the United States filed, 2:10-cv-2601-AKK, doc. 1 and 2:11-cv-1156-AKK, doc. 1, and the sworn affidavit Mosley filed in response to Defendants' motions for summary judgment, doc. 48-1, the court will proceed with the merits of the motions without any delay for discovery. *See U.S. v. 3402 53rd Street West, Bradenton, FL*, 178 Fed. App'x. 946 (11th Cir. 2006) (affirming grant of summary judgment in an *in rem* civil forfeiture action that relied heavily on a sworn affidavit).

To establish a claim for conversion under Alabama Code §6–5–261,[4] there must be "[1] a wrongful taking or [2] a wrongful detention or interference, or [3] an illegal assumption of ownership, or [4] an illegal use or misuse of another's property." *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1303–04 (11th Cir. 2010)

---

[4] Code of Ala. §6–5–261 states, "Mere possession of a chattel, if without title or wrongfully, will give a right of action for any interference therewith, except as against the true owner or the person wrongfully deprived of possession."

7

(citing *Covington v. Exxon Co.,* 551 So. 2d 935, 938 (Ala.1989)). Usually, conversion consists "either in the appropriation of the thing to the party's own use and beneficial enjoyment, or its destruction, or in exercising of dominion over it, in exclusion or defiance of the plaintiff's right, or in withholding the possession from the plaintiff, under a claim of title inconsistent with his own." *Perkins v. City of Creola*, 713 F. Supp. 2d 1326, 1348–49 (S.D. Ala. 2010). Relevant here, Mosley concedes in his complaint that the seized funds ultimately came to rest in the possession of DEA Agent Walker. Doc. 1 at 11–12. Nonetheless, Mosley still maintains that ALK and the City converted his funds because ALK seized the money, and transferred it to the City, who in turn transferred it to the DEA. *See* doc. 1 at 11-12.

### A. ALK's Motion for Summary Judgment

The question of who seized Mosley's property is a legal one for the court to decide. *See Goolesby v. Koch Farms, LLC*, 955 So. 2d 422, 430 (Ala. 2006). As it relates to ALK, it purportedly seized Mosley's money when Spurlock, after opening the safe with a crowbar, refused to give the contents to Mosley and insisted on calling the police. *See* docs. 1 at 45; 48-1 at 4. Even if Mosley is correct that Spurlock's conduct resulted in a seizure of his property, "the bare possession of property without some wrongful act in the acquisition of possession, or its detention, and without illegal assumption of ownership or illegal user or

8

misuser, is not conversion." *Perkins*, 713 F. Supp. 2d at 1349. Rather, when personal property is withheld from the true owner for a reasonable time, to enable the entity in possession to determine who has the right to possession, the detention is reasonable, and does not rise to a conversion. *See Scott Paper Co. v. Novay Cherry Barge Service, Inc.*, 265 So. 2d 150 (Ala. Civ. App. 1972); *Bolling v. Kirby*, 90 Ala. 215, 7 So. 914 (1890); *Gabrielson v. Healthcorp of Eufaula, Inc.*, 628 So. 2d 411, 414 (Ala. 1993) (A limited or qualified refusal to surrender the property is not per se a conversion if it is reasonable and in good faith).

Based on the complaint and Mosley's affidavits, docs. 1 at 45 and 48-1 at 4-5, Spurlock made a qualified refusal to return the property after finding almost $900,000 in cash, packed in Ziploc bags, in a locked safe to which Mosley did not know the combination and which Spurlock opened with a crowbar. These facts are sufficient for Spurlock to have a reasonable basis to suspect illegal activity and to be apprehensive about his own role in opening the safe, especially in light of the one-seventh share Spurlock claims Mosley offered him to entice Spurlock to refrain from calling the police. These facts unequivocally fall within the "rule that where chattels are withheld from the true owner or his agent for a reasonable time after demand, for the purpose of enabling the holder to determine who has the right to possession, the detention is reasonable and does not constitute conversion." *Scott*, 265 So. 2d at 153. Therefore, because ALK made a qualified refusal, and

9

Mosley has not offered a valid reason for discovery and has thus failed to meet his burden of going beyond the pleadings, and based on Mosley's own affidavits,[5] the court grants ALK's motion.

### B. City of Birmingham's Motion for Summary Judgment

The City's motion for summary judgment is due to be granted for the same reasons, i.e. the City never possessed Mosley's property and had sufficient reasonable apprehension considering the circumstances to contact the DEA. Moreover, even if the City's police officers' conduct constituted a seizure, no liability exists because the officers had the authority to do so under Alabama law: "seizure without process may be made if . . . [t]he state, county or municipal law enforcement agency has probable cause to believe that the property was used or is intended to be used in violation of this chapter." Ala. Code §20–2–93(b)(4). Probable cause existed here because of the suspicious nature of the entire episode, including, in part, the alert for the presence of drugs in the safe by the drug-detection dog. *See Lee v. Ferraro*, 284 F.3d 1188, 1195 (11th Cir. 2002) (quoting

---

[5] Mosley raises two arguments in opposition to Defendants' motions. First, Mosley contends that he had no obligation to make a demand for his property in order to retain his conversion claim. Doc. 48 at 6 (citing *Horne v. TGM Associates, L.P.*, 56 So. 3d 615, 629 (Ala. 2010) (held that because plaintiffs presented substantial evidence that the defendants wrongfully took dominion and control of their personal property, plaintiffs were not required to demand its return in order to maintain their conversion claim). This contention is unavailing because the defendants are not challenging the conversion claim based on Mosley's failure to demand his property. For the same reasons, the contention that the conversion claim does not fail because the seized property was "specific bills or notes squirrelled away in . . . bags," doc. 48 at 4 (quoting *U.S. Fidelity and Gauranty Co. v. Bass*, 619 F.2d 1057, 1060 (5th Cir. 1980), also misses the mark.

*Redd v. City of Enterprise*, 140 F.3d 1378, 1382 (11th Cir. 1998) ("Arguable probable cause exists 'where reasonable officers in the same circumstances and possessing the same knowledge as the [officer] could have believed that probable cause existed . . . .'").[6]  All these facts enabled the police officers to withhold Mosley's property or seize it without process under the suspicion that it was "furnished or intended to be furnished by any person in exchange for a controlled substance in violation of any law of this state."  Ala. Code §20-2-93(a)(4). Therefore, Mosley's contention that Code of Ala. §20–2–93 "afforded none of the Defendants authority to seize Plaintiff's personal property because none of its conditions, found at *Code of Ala.,* §20-2-93(b)(1)-(4) were met and none have since been met," doc. 1 at 11, is unavailing.

In sum, because Alabama law authorized the police officers' actions and for the same reasons the court discussed regarding ALK's motion, the City's motion is due to be granted.

---

[6] The court recognizes that Mosley challenges the positive hit for drug residue by the dog. *See* docs. 1 at 45 (Mosley's statement that he "did not see any noticeable reaction in the dog"), and 48-1 at 7-8 (Mosley's reliance on expert contention that 90% of currency in circulation has traces of cocaine).  However, whether an officers actions are reasonable are judged from the perspective of the officer. *See Terrell v. Smith*, 668 F.3d 1244, 1251 (11th Cir. 2012) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989) ("The Supreme Court has reminded us that [an] officer's conduct 'must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'")).

## IV. Conclusion

For the reasons stated above, Defendants' motions for summary judgment are granted and ALK's motion to strike is denied. The court will enter a separate order consistent with this opinion.

**DONE** the 31st day of March, 2016.

                                            **ABDUL K. KALLON**
                                    UNITED STATES DISTRICT JUDGE